IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 15, 2015

## HOWARD LAVELLE TATE v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2009-A-75     Steve R. Dozier, Judge**

_____

**No. M2014-02438-CCA-R3-PC – Filed September 4, 2015**

_____

The petitioner, Howard Lavelle Tate, appeals the denial of his petition for post-conviction relief, arguing that he received ineffective assistance of counsel. After review, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and NORMA MCGEE OGLE, JJ., joined.

Ryan C. Caldwell, Nashville, Tennessee, for the appellant, Howard Lavelle Tate.

Herbert H. Slatery III, Attorney General and Reporter; M. Todd Ridley, Assistant Attorney General; Glenn R. Funk, District Attorney General; and J. Wesley King, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

The petitioner was convicted by a Davidson County Criminal Court jury of two counts of the sale of 0.5 grams or more of cocaine, possession of 26 grams or more of cocaine with intent to sell or deliver, possession of marijuana, and possession of drug paraphernalia, and the trial court imposed an effective sentence of forty-seven years. On direct appeal, this court affirmed the petitioner's two convictions for the sale of 0.5 grams or more of cocaine but reversed the other convictions and remanded to the trial court. The State voluntarily dismissed those charges on remand.

The underlying facts of the case were recited by this court on direct appeal as follows:

The [petitioner]'s convictions are the result of two sales to different confidential informants. During the first sale on July 18, 2007, the confidential informant purchased crack cocaine from the defendant outside a business in Madison, Tennessee. The police observed the sale from a distance and followed the [petitioner] to a gas station. Because undercover police Sergeant Robert Fidler observed that the [petitioner] had not only a female passenger in the passenger seat but also an unrestrained child in the back seat, he radioed for a marked car to stop the [petitioner]; the police consequently discovered the [petitioner]'s identity and that of his passenger, his wife, Marjorie Sloan.[1]

The second sale occurred on July 23, 2007 in the parking lot of a motel in Goodlettsville, Tennessee, to a different confidential informant. After observing the sale from a distance, police followed the [petitioner] to his apartment. Detective Yannick Deslauriers observed the [petitioner] enter one of two apartments but was unable to tell which one. The [petitioner] left shortly thereafter and went to the parking lot of a Taco Bell. Detective Deslauriers remained in his vehicle, which was directly in front of the two apartments he had seen the [petitioner] approach. The [petitioner] returned to the apartment complex and was arrested in the parking lot. Detective Jeffrey Tharpe testified that he searched the [petitioner] and recovered the money used to purchase the cocaine; he then read the [petitioner] his rights. Detective Tharpe testified that during the five to ten minutes that he was speaking with the [petitioner] in the parking lot, the [petitioner] initially told him that he did not live at the apartment where he was being arrested but had been visiting his wife. The [petitioner] then admitted that he lived there. Detective Tharpe testified that Sergeant Fidler and Detective Deslauriers informed him additional narcotics had been found, and he decided to take the [petitioner] into the apartment to finish his paperwork. Detective Deslauriers testified at the suppression hearing that, prior to the consummation of the sale, police were "somewhat aware of where he was probably going to be laying his head, over on Berkley Drive." At trial, he testified that he followed the [petitioner] to the apartment complex "which we later found out is where he was living."

---

[1]The [petitioner]'s wife is alternately referred to as Ms. Sloan and Ms. Tate throughout the record. On the consent to search form, her name appears as "Marjorie D. Sloan," and her signature gives her name as "Marjorie Tate / Sloan." We have decided to refer to her as Ms. Sloan.

At the suppression hearing, Detective Deslauriers testified that during the arrest, he could see Ms. Sloan look out the window of the apartment towards the area of the parking lot where the [petitioner] was being arrested. He testified that she then "ran into a back bedroom." Detective Deslauriers alerted Sergeant Robert Fidler, who testified that he was afraid Ms. Sloan would destroy evidence located inside the home. Detective Deslauriers asked Sergeant Fidler, who had the [petitioner]'s house key, to accompany him to the apartment. Detective Deslauriers testified that they knocked on the door, did not receive an answer, and entered, using the [petitioner]'s house key, which was in Sergeant Fidler's possession.[2] Sergeant Fidler also testified that they knocked and announced they were the police and that Ms. Sloan did not open the door, although he did not remember if the door was unlocked or if the police used the [petitioner]'s key to enter. Ms. Sloan came towards the doorway and met the police after they had entered her home. She cooperated with them and took Sergeant Fidler to a bedroom where he recovered a crown royale bag containing four bags of a white, rock-like substance. She also showed him a container with two bags of marijuana and a small bag of powder cocaine. Ms. Sloan then pointed out a kitchen drawer which contained two sets of digital scales. Ms. Sloan signed a consent to search after the police had recovered the evidence. A marijuana grinder and pipe were also recovered from the living room.

At the time of the suppression hearing, the [petitioner] had not been charged with any crimes related to the July 18, 2007 sale. The [petitioner]'s counsel cross-examined Detective Deslauriers at the suppression hearing regarding prior testimony he gave that the July 23, 2007 sale had occurred in Madison, Tennessee. Detective Deslauriers testified that he had probably been confused because the police had monitored multiple sales made by the [petitioner], and the [petitioner]'s attorney objected to the testimony. The [petitioner]'s attorney also objected to Detective Deslauriers's testimony that he recognized Ms. Sloan from prior sales. In 2009, a new indictment was returned, charging the [petitioner] with one additional count of sale of a controlled substance occurring on July 18, 2007.

At the suppression hearing and at trial, the [petitioner] explored various inconsistencies in the State's evidence. The [petitioner] questioned

---

[2]On cross-examination, Detective Deslauriers stated that the supplemental report did not indicate Sergeant Fidler used a key to enter the home and that this was a mistake, and that his prior testimony at a preliminary hearing that Ms. Sloan gave consent to enter the home was also a mistake.

the witnesses regarding the money used to purchase the cocaine. At the hearing, Detective Deslauriers testified that during the July 23 sale, he provided previously photocopied buy money to the confidential informant. Based on the photocopy, he testified that he believed he gave the informant $100. Detective Deslaurier and Sergeant Fidler testified that if the buy money was not recovered, officers would have to fill out a 330 form, but if it was recovered, they would not. Detective Deslauriers testified that the police would photocopy sheets of money and circle the bills being used in a particular transaction. Sergeant Fidler testified that he checks out five to ten thousand dollars at a time. Detective Deslauriers testified that he believed that the five circled $20 bills were given to the informant. A photocopy of four $20 bills recovered from the [petitioner] was included in the exhibits from the hearing. At trial, Detective Tharpe testified that the money might have been "marked and it could have been that we were going to attempt to buy more from the [petitioner], just check and see if he had any additional on him at the time of the buy." Both officers ultimately testified that the purchase was $80 worth of cocaine.[3] Detective Tharpe acknowledged that he did not in the paperwork distinguish the buy money from the total sum of $651 which was seized from the [petitioner]'s person upon arrest. The photocopies were introduced at trial, but the actual cash was not.

The [petitioner] also explored inconsistencies in the evidence regarding the substance purchased on July 23, 2007. After meeting the [petitioner] on July 23, 2007, the confidential informant returned with what Detective Deslauriers testified was a yellow rock substance which field tested positive for cocaine. Detective Deslauriers testified that he might have put it in an evidence bag but probably put it in the cup holder of his car. All of the paperwork and the testimony of both officers reflect the fact that the substance was rock-like.

Denotria Patterson, a forensic scientist at the Tennessee Bureau of Investigation, testified at both the suppression hearing and the trial. According to Ms. Patterson's notes, she received as evidence in the [petitioner]'s case one large plastic bag containing four smaller bags

---

[3]Detective Deslauriers, when confronted with the "before" photocopy at the suppression hearing, testified that he believed the purchase was for $100 of cocaine. At trial, he testified that he understood the deal to be "either a hundred or $80 worth of crack cocaine. And it was $80 worth of crack cocaine that we were to purchase that day." Detective Tharpe testified at trial the purchase was for $80 of cocaine. The transcript also shows he stated that "$88 of [the recovered money] was the photocopied buy money."

4

containing a total of 111.1 grams of rock-like cocaine, two plastic bags containing 2.8 grams of powder cocaine, and two plastic bags containing 11.2 grams of marijuana. Detective Deslauriers acknowledged he had never previously identified the substance bought by the informant as powder cocaine. At trial, Ms. Patterson stated she initially classified the substance as powder based on a visual inspection; she also testified that crack cocaine may sometimes come in a "fine powder" and that the bag of purchased cocaine was not the same texture as the bag of powder cocaine recovered from the apartment because it was more compressed rather than a loose powder. At the suppression hearing, both Detective Deslauriers and Detective Tharpe testified that they had previously seen powder cocaine in a compressed form, in which it would appear to be a white or yellowish rock substance. Detective Deslauriers and Sergeant Fidler testified that because an incident report or property sheet only has one place to identify the location, the location of evidence would have been filled out as the [petitioner]'s address even though the sale took place at the motel.

The [petitioner] also questioned witnesses regarding discrepancies in the weight of the narcotics. Detective Tharpe testified that his supplemental report included the cocaine purchased July 23, 2007, which was described as 2.0 grams of a yellow rock substance; this report was not in evidence. An inventory of seized property likewise had the weights recorded, identifying a large plastic bag with four smaller bags of cocaine weighing 29.9 grams, 28.8 grams, 29.3 grams, and 29.2 grams; two bags of marijuana weighing 4.0 and 7.8 grams; and one bag of white powder weighing 2.1 grams. The bag of cocaine obtained from the informant is listed without a weight. Detective Tharpe testified he added the weight of the cocaine obtained from the informant to the crack cocaine recovered from the apartment to arrive at the totals listed on a notice of property seizure which identified the drugs as 118.5 grams of crack cocaine, 2.1 grams cocaine, and 11.8 grams marijuana. Ms. Patterson, on the other hand, classified 111.1 grams as crack cocaine; this did not include the substance obtained from the informant. Ms. Patterson testified she weighed the narcotics without the plastic bags. Ms. Patterson weighed the bags she had classified as powdered cocaine, and recorded weights of 1.08 grams and 1.8 grams.

State v. Howard Lavelle Tate, No. M2010-02555-CCA-R3-CD, 2012 WL 6570899, at *1-3 (Tenn. Crim. App. Dec. 17, 2012), perm. app. denied (Tenn. May 9, 2013).

The petitioner timely filed a *pro se* petition for post-conviction relief and, following the appointment of counsel, an amended petition was filed. In his petitions, among other things, the petitioner raised the five allegations of ineffective assistance of counsel pursued in this appeal: trial counsel (1) failed to pursue a <u>Ferguson</u>[4] ruling, (2) failed to preserve for appeal the denial of his motion for a severance, (3) failed to address the chain of custody of the drugs pertinent to count one, (4) failed to object to Detective Deslauriers' testimony regarding trial exhibit ten – a "yellowish rock substance," and (5) failed to cross-examine detectives regarding discrepancies in their testimonies about the amount of "buy money" recovered. We will attempt to confine our summary of the evidentiary hearing to testimony that is relevant to these issues.

The petitioner testified that he was represented by three attorneys over the course of the case, with counsel representing him during the trial and on appeal. The petitioner stated that he discussed with counsel the discrepancies between the evidence he believed the State would present at trial and what he believed the evidence to be. He elaborated that he informed counsel that, during an earlier suppression hearing, a police officer testified that the narcotic at issue was a yellowish rock substance but that the State had claimed it was a compressed powder that appeared to be crack cocaine. The petitioner said that a lab report regarding a yellowish rock substance was never presented.

The petitioner expressed concerns regarding the weight and consistency of the substance evidence recovered in his case. He said that one of his initial attorneys indicated that she intended to file a motion regarding a <u>Ferguson</u> missing evidence issue and chain of custody problem. That motion was ultimately filed, but the trial court did not rule on the issues pretrial. The petitioner requested in writing that counsel pursue having the trial court rule on the motion, but counsel never responded, and the issues were waived on appeal. The petitioner believed that the issues could have "[p]ossibly" led to the dismissal of his case.

The petitioner discussed the motion to sever offenses filed by counsel. He recalled that the motion was heard and denied on the day of trial. He said that counsel failed to preserve the denial of the severance motion for appeal. The petitioner stated that counsel also failed to challenge the chain of custody with regard to count one. He elaborated that, in his view, the chain of custody issue was the "narcotic itself. . . . [Y]ou have the investigators testifying that the alleged narcotic in support of count one is two grams of crack; whereas, once again, there is no lab report for two grams of crack." He further elaborated that the State's contention was that the substance was a compressed powder that appeared to be crack. He also stated that no "buy money" was ever recovered and

---

[4]<u>State v. Ferguson</u>, 2 S.W.3d 912 (Tenn. 1999).

that counsel failed to cross-examine Detective Deslauriers about an alleged discrepancy in the amount of "buy money" he testified to.

The petitioner testified that counsel failed to object to or thoroughly cross-examine Detective Deslauriers regarding his testimony identifying exhibit ten as "a yellowish rock substance." The petitioner stated that the same exhibit was identified by another State witness as a "white powdered substance." By counsel's failure to object, the issue was not preserved for appeal.

Counsel testified that he and the petitioner were in communication quite frequently, via phone calls, letters, and in person visits. The petitioner was particularly concerned with "issues about the evidence; the buy money; the hue of the cocaine, whether it was white or off-white or yellowish." The petitioner also disagreed with the State's portrayal of Detective Deslauriers as being honest. Counsel and the petitioner developed a trial strategy that involved challenging some possible inconsistencies in the State's proof. Counsel said that he cross-examined the State's witnesses in accordance with their strategy.

Counsel testified that, prior to trial, he filed and argued a motion to sever the petitioner's charges. In light of the evidence, he felt that the court properly denied the motion, and he decided not to include it in his motion for new trial because he believed, based on his research, that the Court of Criminal Appeals would not "give it much merit." Additionally, he "felt like the other issues were more central to the defense[.]"

Counsel testified that he felt it was unnecessary to have the drug evidence independently tested. He elaborated:

> Not only was there adequate testimony about the transactions that had occurred but [the petitioner] admitted that he had the cocaine, not only to myself but also to the detectives. And so I really didn't see the need in asking for something to be tested that literally everybody involved in the case agreed was cocaine.

With regard to the allegation that he was ineffective for failing to object to Detective Deslauriers' identification of exhibit ten as a yellowish rock substance, counsel testified that he could not object to the detective's "identifying something as A, B or C" but that he cross-examined the detective about the inconsistencies. He also did not object to Detectives Deslauriers and Tharp's attempted explanation for the discrepancies in the dollar amounts from the controlled buys. Counsel stated that he wanted the information to come in so he could attack it on cross-examination and also allow the jury to see "that

maybe there were some mistakes made" in the State's investigation. Counsel believed that his cross-examination was consistent with his theory of defense.

As to his reason for not pursuing the Ferguson and chain of custody issues, counsel testified that, shortly before the trial in this case, he was in the courtroom and, by happenstance, heard another attorney argue a similar issue before the trial court. The trial court "made a very detailed explanation" as to why there was not a chain of custody issue and cited cases. Counsel then conducted his own independent research and determined that the issue lacked merit.

After the hearing, the post-conviction court entered a written order denying post-conviction relief, finding that the petitioner failed to prove his allegations by clear and convincing evidence.

## ANALYSIS

The petitioner argues that the post-conviction court erred in denying him relief because he received ineffective assistance of counsel. He asserts that counsel was ineffective because he: (1) failed to pursue a Ferguson ruling, (2) failed to preserve for appeal the denial of his motion for a severance, (3) failed to address the chain of custody of the drugs pertinent to count one, (4) failed to object to Detective Deslauriers' testimony regarding trial exhibit ten – a "yellowish rock substance," and (5) failed to cross-examine detectives regarding discrepancies in their testimonies about the amount of "buy money" recovered.

The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). Where appellate review involves purely factual issues, the appellate court should not reweigh or reevaluate the evidence. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). However, review of a trial court's application of the law to the facts of the case is de novo, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed de novo, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's

8

deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). Moreover, the reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance, see Strickland, 466 U.S. at 690, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. See Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). The prejudice prong of the test is satisfied by showing a reasonable probability, i.e., a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

Courts need not approach the Strickland test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697; see also Goad, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

The petitioner has failed to prove either the deficiency or prejudice prongs of the Strickland test. Other than a cursory reference in his brief, the petitioner does not explain how counsel was ineffective with regard to the Ferguson, severance, or chain of custody issues. At the hearing, the petitioner speculatively testified that he might have "possibly" prevailed on the Ferguson or chain of custody claims had they been raised on appeal. Counter to that, though, counsel explained that he made the well-reasoned, tactical

9

decision to not pursue the Ferguson, severance, or chain of custody issues on appeal. In addition, despite these complaints about counsel's appellate strategy, the petitioner fails to mention that counsel successfully persuaded this court to reverse three of his five convictions on direct appeal.

As to his allegations that counsel was ineffective for failing to cross-examine officers regarding the description of the drug evidence and amount of "buy money," the petitioner asserts in his brief that the officers' credibility was crucial to the State's obtaining convictions and that counsel failed to effectively challenge the officers' credibility. However, the petitioner did not present any specific incidents where a different cross-examination strategy would have yielded a more favorable outcome. Moreover, counsel testified that their defense strategy was to highlight discrepancies in the State's evidence, and his cross-examination included questioning about those possible discrepancies. The petitioner has not met his burden of demonstrating that he was denied the effective assistance of counsel.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the denial of the petition for post-conviction relief.

_____
ALAN E. GLENN, JUDGE

10